UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER BYRNE,

               Plaintiff

v.

UNITED STATES OF
AMERICA, DEPARTMENT
OF TREASURY –
INTERNAL REVENUE
SERVICE, and
DEPARTMENT OF
JUSTICE,

               Defendants

_____/

Case No. 2:06-cv-12179
District Judge Arthur J. Tarnow
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION REGARDING MOTIONS FOR ATTORNEY FEES (DES 155, 156), BILL OF COSTS (DE 157), and JOINT MOTION FOR BRIEFING SCHEDULE (DE 160)

I.  **RECOMMENDATION**: The Court should **(a)** deny Plaintiff Byrne's

motion for fees and costs pursuant to 26 U.S.C. § 7430 (DE 155), except that the

denial of costs should be without prejudice; **(b)** deny Kus's motion for recovery of

attorneys' fees (DE 156); **(c)** grant Kus's bill of costs (DE 157) as unopposed; and

**(d)** grant the joint motion for briefing schedule (DE 160) *nunc pro tunc*.

II.  **REPORT**

### A.    Background

As an initial matter, it is helpful to identify the parties in this more than decade-old case.  As alleged in various pleadings, Eagle Trim, Inc. commenced operations in January 1999.  (DE 1 ¶ 10.)  Roger Byrne was the President.  (DE 1 ¶ 7.)  Bernard Fuller was the corporate controller from the commencement of operations until February 2001, when he was terminated for "accounting malfeasance."  (DE 1 ¶¶ 10, 20-21.)  Eric C. Kus is "a responsible person of Eagle Trim Incorporated, who willfully failed to collect, truthfully account for, or pay over the withheld federal income and employment taxes due and owing from Eagle Trim Incorporated[.]"  (DE 6 at 9 ¶ 7.)

At the heart of this case are penalties assessed for failing to pay employment tax.  Specifically, on July 25, 2005, the Internal Revenue Service (IRS) assessed Kus a penalty in the amount of $382,048.01 for the 2nd quarter of 2000, a penalty of $35,609.01 for the 3rd quarter of 2000, and a penalty of $438,011.33 for the 4th quarter of 2000.  (DEs 11-3, 11-6, 11-9.)  On August 23, 2005, Kus completed claims for refund and requests for abatement for the second, third and fourth quarters of 2000.  (DEs 11-5, 11-8, 11-11.)  By a letter dated April 13, 2006, the IRS informed Kus that his claims for refund and abatement were disallowed.  (DE 11-12.)

### 1.    The instant lawsuit

Byrne filed this lawsuit against the United States of America on May 11, 2006. (DE 1.) The Government filed a counterclaim on July 14, 2006, which added counter-defendants Kus and Fuller. (DE 6.) Plaintiff filed a cross-claim against Kus and Fuller on July 28, 2006. (DE 7.) On September 5, 2006, Kus filed cross-claims against Fuller and Byrne and a counterclaim against the United States (DEs 9, 10, 11).

On October 5, 2007, the Government, Byrne and Kus had filed motions for summary judgment. (DEs 24-27.) Among other things, Kus and Byrne attached their deposition transcripts, the deposition transcript of Bernard Fuller, the affidavit of Andrew Jones – Americord, Inc.'s CFO / Eagle Trim's Group Controller, and the affidavit of Anthony Pierfelice - a Certified Turnaround Professional - to their dispositive motions. (DEs 24-9, 24-10, 24-11, 24-12, 24-13; DEs 27-3, 27-4, 27-5, 27-6, 27-10.) The Government attached the declaration of Mark Matheson – a GMAC First Vice President – to its replies, while Kus and Byrne appended Pierfelice's supplemental affidavit to their replies and Byrne attached Jones's supplemental affidavit to his reply. (DEs 32-2, 33-2; DE 35-2, 36-2, 36-3.)

The Court conducted a hearing on February 5, 2008. (DE 44 [Transcript].) On February 28, 2008, the Court entered a stipulated entry of judgment against counterclaim defendant Fuller, only. (DE 39.) On May 12, 2008, this Court granted the United States' motion for summary judgment, denied Byrne's and

Kus's motions for summary judgment, entered a judgment in favor of the United States and dismissed the case.  (DEs 40-41.)

### 2.   The first appeals

On May 19, 2008, Byrne and Kus filed a joint notice of appeal.  (DE 42.) On July 10, 2008, the Government filed its own notice of appeal.  (DE 45.)  On September 23, 2008, the Sixth Circuit granted the Government's July 25, 2008 motion to dismiss the appeal and cross-appeal.  (DE 47-2, DE 47-4.)  *See* Case Nos. 08-1693/1947 (6th Cir.).

On July 2, 2010, the Government moved for entry of judgment based on amounts due on and accruing from June 28, 2010.  (DE 47.)  On August 17, 2010, the Court granted the motion for entry of judgment and entered judgment in favor of the United States and against Byrne in the amount of $594,774.58 and Kus in the amount of $594,774.84.  (DEs 52, 53.)

### 3.   The second appeals

Kus and Byrne filed notices of appeal in August and October 2010, respectively.  (DEs 54, 56.)  On September 4, 2012, the Sixth Circuit reversed the district court's grant of summary judgment in favor of the Government and remanded the case for further proceedings.  (DE 61 [Case No. 10-02080 (6th Cir.)].)  The mandate issued on November 2, 2012.  (DE 63.)

Byrne and Kus together filed a renewed motion for summary judgment. (DE 70.) Among the attachments to their separately docketed brief in support is Matheson's supplemental affidavit, dated October 24, 2014. (DE 71-2.) The case was reopened on December 23, 2014 by way of a stipulated order. (DE 72.) On June 16, 2015, this Court denied the renewed motion for summary judgment. (DE 96.)

From June 22 through 24, 2015, Judge Tarnow conducted a bench trial. (*See* DEs 115-117 [Transcripts].) On August 4, 2015, he entered findings of fact and conclusions of law. (DE 99.) Then, on October 30, 2015, the Court entered judgment in the Government's favor, adjudging that Kus was liable for $533,204.37 and Byrne was liable for $533,213.42. (DE 112.)

### 4. The third appeal

Byrne and Kus filed a joint notice of appeal. (DE 113.) On May 15, 2017, the Sixth Circuit concluded that Byrne and Kus "did not willfully fail to pay Eagle Trim's trust-fund taxes[,]" and "vacate[d] the district court's judgment and remand[ed] for further proceedings not inconsistent with [its] opinion." (DE 132 at 4 [Case No. 15-02396 (6th Cir.)].) The mandate issued on August 10, 2017. (DE 133.) On March 30, 2018, the Court entered an order, which, in part, administratively closed the August 11, 2017 motion for judgment. (DE 134, DE 152.) On April 16, 2018, Kus and Byrne filed a joint motion for entry of

judgment. (DE 153.) On April 20, 2018, this Court entered judgment, which, in part, determined that Kus and Byrne were not liable for the trust fund recovery penalty related to their ownership and operation of Eagle Trim, Inc. (DE 154.)

### B.    Instant Matters

Currently before the Court are Plaintiff's May 18, 2018 motion for fees and costs pursuant to 26 U.S.C. § 7430 (DE 155) and Kus's May 18, 2018 motion for recovery of attorneys' fees and bill of costs (DEs 156, 157). Judge Tarnow has referred these matters to me for hearing and determination or report and recommendation. (DEs 158, 159.)[1]

On June 1, 2018, the United States, Kus and Byrne filed a joint motion for briefing schedule. (DE 160.) Although this filing has not been expressly referred to me, it is associated with the matters referred to me. Moreover, I note that the United States, Kus and Byrne have since filed a response and replies, respectively, which are consistent with the proposed briefing schedule. (DEs 161, 163, 164.)

---

[1] Although the motions for attorney fees (DEs 155, 156) were referred for hearing and determination (DE 158), I offer my opinion in the form of a report and recommendation. *See*, *e.g.*, *Apollo Drywall, Inc. v. United States*, No. 5:91-CV-16, 1993 WL 304392, at *1 (W.D. Mich. June 3, 1993) (order accepting magistrate judge's report and recommendation on application for fees and expenses); *see also McMillan v. United States*, 891 F. Supp. 408, 409-411 (W.D. Mich. 1995) (adopting report and recommendation regarding attorney's fees), *aff'd*, 89 F.3d 834 (6th Cir. 1996).

## C.    26 U.S.C. § 7430 ("Awarding of costs and certain fees")

Byrne and Kus bring their motions pursuant to 26 U.S.C. § 7430.  In

general, this statute provides:

> In any administrative or court proceeding which is brought by or
> against the United States in connection with the determination,
> collection, or refund of any tax, interest, or penalty under this title, the
> prevailing party may be awarded a judgment or a settlement for—
>
> > (1)    reasonable administrative costs incurred in connection
> > with such administrative proceeding within the Internal
> > Revenue Service, and
> >
> > (2)    reasonable litigation costs incurred in connection with
> > such court proceeding.

26 U.S.C. § 7430(a).  Reasonable litigation costs and reasonable administrative

costs are defined by Section 7430(c)(1) and Section 7430(c)(2), and attorneys' fees

are defined by Section 7430(c)(3).

Importantly, prevailing party is defined by Section 7430(c)(4) and includes

any party which "has substantially prevailed with respect to the amount in

controversy," or "has substantially prevailed with respect to the most significant

issue or set of issues presented[.]"  26 U.S.C. § 7430(c)(4)(A)(i).  However, "[a]

party shall not be treated as the prevailing party in a proceeding to which

subsection (a) applies if the United States establishes that the position of the United

States in the proceeding was substantially justified."  26 U.S.C. § 7430(c)(4)(B)(i).

## D.    Discussion

### 1.    Byrne's motion for fees and costs and Kus's motion for attorney fees

Byrne argues that he was the prevailing party in this matter and that "[t]he fees and costs incurred were reasonable." (DE 155 at 23-32.) Byrne claims that, since the 2005 assessment, he has incurred "a total of $408,882.50 in attorneys['] fees and $3,141.69 in costs[.]" (DE 155 at 29; *see also* DE 155 at 6, 15.) Kus argues that: (a) he "timely filed his motion for attorneys' fees[;]" (b) he "is entitled to attorneys' fees under Section 7430 as the prevailing party[;]" (c) "[t]he Government lost on substantially similar issues[;]" and, (d) "[t]he fees and costs incurred were reasonable." (DE 156 at 16-25.) Kus claims that, during a nearly thirteen year period, he has incurred "a total of $271,993 in legal fees and $9,171.04 in costs." (DE 156 at 23.)[2]

### a.    Byrne's and Kus's requests for costs

Byrne supports his request for $3,141.69 in costs with a citation to the Sixth Circuit's August 10, 2017 mandate, which notes that a total of $1,645 in costs were to be recovered by "Randolph T. Barker [Byrne's counsel], Scott R. Murphy [Kus's counsel][.]" (DE 155 at 15 n.1, DE 133.) Byrne also refers to attorney

---

[2] The Government does not seem to challenge Kus's argument that he "timely filed his motion for attorneys' fees." (DE 156 at 16-17.) Nor does the Government seem to contest Byrne's and Kus's arguments that "the fees and costs incurred were reasonable." (DE 155 at 28-32, DE 156 at 23-25.) Accordingly, the focus of this report and recommendation is whether the Government's position was substantially justified.

Barker's declaration and provides approximately 238 pages of account statements dated 2002 through 2018.  (DE 155 at 15, DE 155-2 [Barker Declaration], DE 155-3, DE 155-4.)  However, the sources of the remaining $1,496.69 in costs are unclear.

Likewise, Kus supports his request for $9,171.04 costs with a citation to the Sixth Circuit's mandate.  (DE 156 at 10 n.2, DE 133.)  Moreover, the mandate amount is repeated *within* Kus's bill of costs, which, in turn, seeks $4,221.88, as discussed in further detail below.  (DE 157 at 1, 26.)  Kus also refers to the May 18, 2018 "affidavit of Scott R. Murphy in support of Eric C. Kus' motion for attorneys' fees," attached to which are approximately 270 pages of exhibits.  (DE 156 at 10, DE 156-4.)  Here, too, the sources of the remaining $4,949.16 in costs are unclear.

Although the Undersigned does not doubt Byrne's or Kus's assertions of costs, it is not clear whether these remaining amounts may be considered "reasonable litigation costs" or "reasonable administrative costs" as defined by 26 U.S.C. §§ 7430(c)(1),(2).  If these remaining amounts are properly classified under Section 7430, then the associated requests for reimbursement are subject to the foregoing analysis on substantial justification.  *See* 26 U.S.C. § 7430(c)(4)(B).  To the extent the remaining amounts may also be the subject of a bill of costs presented to the Clerk of the Court, the parties' associated requests for

reimbursement should be denied without prejudice to renewal by way of a separately filed bill of costs.

### b.   Byrne's and Kus's requests for fees

As noted above, Byrne and Kus seek reimbursement of $408,882.50 and $271,993 in attorney and/or legal fees, respectively, as prevailing parties. 26 U.S.C. § 7430(a). The Government responds that Kus's and Byrne's Section 7430 claims fail, because its "position was substantially justified[,]" as set forth in 26 U.S.C. § 7430(c)(4)(B)(i). (DE 161 at 11-13.) The Government's position is "substantially justified" if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person[,]" or has a "'reasonable basis both in law and fact[.]'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (interpreting the EAJA). *See also William L. Comer Family Equity Pure Tr. v. C.I.R.*, 958 F.2d 136, 138-140 (6th Cir. 1992) (citing *Pierce* and affirming the Tax Court's decision "denying their motion for litigation costs and sanctions.").

Byrne and Kus each mention a period of ten years, presumably a reference to the time between the August 23, 2005 claims for refund and requests for abatement and the June 22-24, 2015 bench trial. Specifically, after identifying "the issue of their ability to pay the then unreconciled trust fund taxes upon discovering that Fuller had committed accounting fraud . . . [,]" Byrne contends that, "[r]ather than resolve this issue at the administrative appeal stage, the Government waited

until closing arguments at a trial held ten years later to concede this critical and dispositive issue." (DE 155 at 14-15.) Similarly, after mentioning "Byrne and Kus' ability to pay the trust fund tax liability upon discovering that they were victims of fraud[,]" Kus contends that "[t]his issue should have been resolved at the inception of the case but lingered on for over ten years." (DE 156 at 10.)

To determine whether the Government's position was substantially justified, I begin with 26 U.S.C. § 6672 ("Failure to collect and pay over tax, or attempt to evade or defeat tax"), which is the basis of the Government's three counterclaims. (*See* DE 6 ¶¶ 4, 7, 10.) In pertinent part, Section 6672 provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who *willfully* fails to collect such tax, or truthfully account for and pay over such tax, or *willfully* attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a) (emphases added).

Consistent with the various October 5, 2007 motions for summary judgment, and as framed by this Court on May 12, 2008, "at issue is whether Kus and Byrne were 'responsible persons,' and whether the failure to pay the tax was 'willful.'" (DE 40 at 4; *see also* DE 24 at 18-28, DE 25 at 12-17, DE 27 at 20-29.) For the reasons that follow, the Court should conclude that the Government's position was substantially justified.

### i.      Responsible persons

As this Court acknowledged in its May 12, 2008 opinion, "[a]mong the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees are:

> (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation.

*Gephart v. United States*, 818 F.2d 469, 473 (6th Cir. 1987) (citing *Braden v. United States*, 318 F.Supp. 1189, 1194 (S.D.Ohio 1970)).

As to responsibility, the Government argued within its own motion that: (1) "Both Kus and Byrne are responsible persons under section 6672[,]" (2) "Delegation is not a defense to liability[,]" and, (3) "Byrne and Kus cannot escape liability by asserting that they did not have *control* over Trim's finances[.]" (DE 25 at 12-17 (emphasis added).)

Judge Tarnow determined that "Kus and Byrne are responsible persons under the law[.]" (DE 40 at 5-7.) Here, Judge Tarnow stated that, "[c]learly, these two 'were in control of the financial affairs of the corporation,' under *Gephart*." (DE 40 at 6.) Then, on September 4, 2012, the Sixth Circuit stated: "[w]e agree with the district court that the undisputed facts demonstrate Kus and Byrne were

12

responsible persons under § 6672(a)."  (DE 61 at 9.)  Thus, as the Government has

asserted, it "succeeded" on the issue of responsibility.  (*See* DE 161 at 12.)

### ii.    Willful

Perhaps more important here is the Government's position on willfulness.

Preliminarily, it is appropriate to consider Byrne's and Kus's positions on

*knowledge* as set forth in their pleadings filed in 2006.  For example, Byrne alleges

that "[i]n January and February 2001, an examination by GMAC uncovered

'irregularities' in the Company's internal accounting of federal tax deposits."  (DE

1 ¶ 17.)  Byrne further alleges that he "did not become aware of Fuller's

accounting misfeasance until after GMAC's January-February 2001 audit and the

external investigation commissioned by Eagle Trim's senior management."  (DE 1

¶ 20.)  In each of his answers, Kus asserted that "he lacked the knowledge and

willfulness required by 26 U.S.C. § 6672."  (DE 8 at 3-4 ¶ 3, DE 11 at 5 ¶ 3.)

At least as early as their October 5, 2007 motions for summary judgment,

Kus and Byrne addressed the issues of knowledge and control.  Respectively, Kus

and Byrne explained that "[s]everal weeks after GMAC took control of Eagle

Trim, it informed Kus of the outstanding tax liability[,]" and that "GMAC Seize[d]

Control of Eagle Trim After the Discovery of Bernard Fuller's Accounting

Improprieties."  (DE 24 at 15, DE 27 at 15.)  In support of his argument that his

lack of knowledge was not reckless, Kus stated that he "had no knowledge of

Eagle Trim's failure to pay withholding taxes for the second, third, and fo[u]rth quarters of 2000 until well after GMAC took control over Eagle Trim's finances." (DE 24 at 25.)  Similarly, in support of his argument that he could not have acted willfully, Byrne stated that he "had no actual or constructive knowledge of Eagle Trim's employment tax delinquency until after circumstances beyond his control rendered him unable to pay the taxes[.]"  (DE 27 at 23.)  Kus and Byrne also attached a letter dated March 1, 2001, by which WCD informed Byrne that "certain balances in the Company's financial statements . . .  are materially misstated." (DE 24-8, DE 27-15.)

In its own, concurrently-filed dispositive motion, the Government argued that:  (1) "Byrne and Kus willfully failed to pay over the trust fund taxes at issue[,]" and, (2) "Byrne and Kus recklessly disregarded their obligation to ensure that the payroll taxes would be paid."  (DE 25 at 18-21.)  Then, in response to Kus and Byrne's dispositive motions, the Government used Matheson's October 10, 2007 declaration to, *inter alia*, defend its statement that "[a]t no point in time did GMAC direct which expenses should be paid by Trim or control Trim's checkbook."  (DE 30 at 7, DE 30-2 ¶ 6, DE 31 at 7, DE 31-2 ¶ 6).

### (a)      Willfulness and the first appeal

Among other things, the Government contended in its October 5, 2007 motion for summary judgment that the Company's "finances were voluntarily

ceded to GMAC in order to keep the business afloat." (DE 25 at 15.) Citing some of the attachments to the briefing on Kus and Byrne's October 5, 2007 motions for summary judgment, Kus argues here that "the Government has known that GMAC/BBK had complete operational and financial control of ETI [Eagle Trim, Inc.] by the time Kus and Byrne learned of the payroll tax issue." (DE 163 at 5; *see also* DE 24-11 ¶ 15, DE 24-13 ¶ 7, DE 36-2 ¶ 6.)

However, on May 12, 2008, Judge Tarnow granted the Government's motion for summary judgment. (DE 40.) The background facts acknowledged that "according to a declaration by a GMAC Vice President responsible for the Trim account [Matheson], on release of funds to Trim's bank accounts GMAC no longer controlled the funds, and placed no conditions on them." (*Id*. at 3.) Then, when determining that "Kus and Byrne's conduct was willful[,]" the Court disagreed that Kus and Byrne "cannot be found willful, because under the 'lockbox' arrangement with GMAC, they had no control over Trim's finances." (DE 40 at 7, 9.) Ultimately, the Court concluded that "they recklessly disregarded the risk that the taxes were not paid," and "Sixth Circuit case law holds that a 'lockbox' arrangement does not prevent a finding of willfulness[.]" (DE 40 at 10.)

On September 4, 2012, the Sixth Circuit opined that there was "*a genuine dispute* whether Byrne and Kus should have known that the trust fund taxes were not being paid under these circumstances[,]" and also found that, based on the

competing affidavits of Matheson and Pierfelice, "there *[wa]s a factual dispute* about whether Byrne and Kus had any control of the funds received from GMAC and chose to pay other creditors over the IRS or instead lacked control over the funds and the concomitant ability to pay any creditors, including the IRS." (DE 61 at 11, 13-14 (emphases added).) In conclusion, the Sixth Circuit reversed and remanded. (DE 61 at 14.)

In the instant motions, Byrne and Kus contend that the Government used Matheson's original declaration to mislead the Court. (DE 155 at 25, DE 155 at 28 n.5, DE 156 at 19, 21; *see also* DE 164 at 5.) And, Kus's instant motion cites the Government's October 29, 2007 response and its use of Matheson's October 10, 2007 declaration. (DE 156 at 12, DE 30 at 7, DE 30-2.) In addition, Byrne implies that the Government "maintained its unjustified position" in the face of, *inter alia*, Fuller's July 27, 2007 deposition testimony about "falsifying financial records . . . ." (DE 155 at 27-28; *see also* DE 24-10, DE 27-5, DE 164 at 5.) However, Kus, in his November 13, 2007 reply, stated that: "the United States misrepresents the undisputed record by alleging that Kus remained in control of, or could have exerted control over, Eagle Trim's funds at the time he learned of the tax deficiency." (DE 35 at 2.) Similarly, Byrne replied on November 14, 2007 that "once BBK took control of Eagle Trim's financial and operational activities, Byrne had no access to or control over any funds held by Eagle Trim, and thus no

ability to pay the delinquent taxes." (DE 36 at 2-3.) The Court's May 12, 2008 decision followed these arguments (DE 40), and the decision's merits should not be revisited here.

### (b)   Matheson's supplemental affidavit and the Court's June 16, 2015 decision

On October 24, 2014, Matheson executed a supplemental affidavit, which clarified the issue of control:

> Although I stated in my previous affidavit that GMAC did not direct which expenses … should be paid by Eagle Trim or control the company's checkbook, I did not state or infer that Eagle Trim, Eric Kus or Roger Byrne had control over the funds once it was discovered that Mr. Fuller had falsified receivables and BBK was hired by GM to oversee Eagle Trim's finances. To the best of my recollection, this occurred at the time the Forbearance Agreement was negotiated toward the end of January, 2001.

(DE 71-2 ¶ 10.) Byrne and Kus filed a renewed motion for summary judgment on December 10, 2014 and attached Matheson's supplemental affidavit to the accompanying brief, after which the parties stipulated to reopen the case. (DEs 70-72.) The Court conducted a hearing on June 16, 2015, after which it entered an order denying the renewed motion for summary judgment. (DE 96.)

In his instant motion, Byrne contends that, once it had Matheson's supplemental declaration "in hand," the Government "had an obligation to concede the point[,]" as the supplemental declaration clarified the issue of control. (DE 155 at 25-26.) Instead, Byrne claims, the Government maintained its "unsustainable

position," while "using dilatory tactics to delay the renewed summary judgment motion," and continued to maintain its position until the June 24, 2015 closing arguments, *i.e.*, for approximately eight months. (DE 155 at 26; *see also* DE 156 at 19.) Moreover, Kus contends that Matheson's supplemental affidavit – which was attached to the separately docketed brief in support of their renewed motion for summary judgment - "directly contradicted the Government's argument and removed any factual support for the Government's position." (DE 163 at 3-4, DE 71-2; *see also* DE 164 at 2 n.1.)

Yet, when responding on July 16, 2018 that Kus's and Byrne's May 18, 2018 "attempt to relitigate the merits of this case in a motion for costs is contrary to law[,]" the Government points to its May 20, 2015 filings in response to the renewed motion for summary judgment, one of which argues that "the October 2014 affidavit of Mark Matheson does not substantially change the body of evidence relevant to willfulness." (DE 161 at 13-14, DE 85 at 24-25; *see also* DE 83-20, DE 83-21, DE 84 ¶¶ 64-66.) In reply, Kus contends that "the Government lacked any evidence to support" its May 20, 2015 argument about disbursement authority, which appeared within its argument that "pressure from creditors, customers, or superiors does not negate willfulness." (DE 163 at 5, DE 85 at 22-24.) Byrne makes a similar statement about the Government's longstanding position that "they somehow had the ability and funds necessary to direct payment

of trust fund taxes to the IRS upon learning of the delinquency."  (DE 164 at 2.)
Nonetheless, approximately one month later, on June 16, 2015, this Court denied
the renewed motion for summary judgment, stating in part that "Byrne and Kus
failed to meet their burden as summary judgment movants."  (DE 96 at 2.)

I note that the particulars of the June 16, 2015 hearing are not evident from
the same-day order, and I further note that the docket does not contain a transcript
of this event to confirm the particulars.  Nonetheless, I assume for purposes of this
report that the Court considered Matheson's supplemental affidavit – which was
squarely before it at the time –  in its June 16, 2015 decision denying the renewed
motion for summary judgment.[3]  Thus, to the extent Kus and Byrne ask the Court
to focus on Matheson's October 24, 2014 affidavit, the merits of the Court's June
16, 2015 decision should not be revisited.

### (c)    Reckless disregard and the second appeal

Judge Tarnow conducted a bench trial in June 2015, during which time
Byrne and Kus claim the Government abandoned the control issue.  (DE 155 at 26,
DE 156 at 19; *see also* DEs 115-117.)  This "concession" appears to be based on
the Government's June 24, 2015 decision, as Kus phrases it, "not to call Matheson

---

[3] Although the Court's order does not expressly refer to Byrne and Kus's
simultaneously-filed brief to which the supplemental Matheson affidavit was
attached (*see* DE 71, DE 71-2), the Court's order does expressly refer to the
renewed motion for summary judgment, which itself refers to the
contemporaneously-filed brief (*see* DE 70 at 2 ¶ 4).

or Pierfelice as witnesses . . . [,]" and its concession regarding "the ability to pay."

(DE 156 at 21; *see also* DE 155 at 21; DE 163 at 4, 6; DE 164 at 2, 6; DE 117 at 5-

7, 11, 31, 42.)  Kus claims he is "entitled to recover all of the fees he incurred prior

to the Government's decision to withdraw its argument that he chose to pay

creditors other than the Government[,]" and Byrne makes a similar argument.  (DE

163 at 6; DE 164 at 6.)

However, on August 4, 2015, Judge Tarnow filed findings of fact and

conclusions of law.  (DE 99.)  Specifically,

- As to actual knowledge, Judge Tarnow concluded Kus and Byrne's "failure to divert funds to the IRS did not constitute a willful failure to pay the taxes."  (DE 99 at 11-12.)

- As to reckless disregard, Judge Tarnow concluded that Byrne and Kus "recklessly disregarded known risks that the payroll taxes for the third and fourth quarters of 2000 would not be paid."  (DE 99 at 12.)  Within this discussion, Judge Tarnow noted that "the recklessness issue" was "a *close call*."  (DE 99 at 14 (emphasis added).)  Still, the Court stated that "the information from WCD was no cure for Byrne and Kus's recklessness in relying on Fuller to fulfill duties he had fulfilled so unreliably in the past."  (DE 99 at 16.)  Ultimately, he determined that "Byrne and Kus willfully withheld payroll taxes for the third and fourth quarters of 2000 and [we]re liable for those taxes under 26 U.S.C. § 6672(a)."  (*Id.*)

On May 15, 2017, the Sixth Circuit stated:  "After a review of the record and a

clarification of what constitutes reckless conduct for purposes of § 6672(a), we

conclude that Byrne and Kus did not willfully fail to pay Eagle Trim's trust-fund

taxes."  (DE 132 at 4.)  As to reckless disregard,

- The Sixth Circuit explained that it had "never held that negligence, even gross negligence," was "enough to support a finding of willfulness." (DE 132 at 12.) Instead, it noted that "[w]hat constitutes reckless disregard for purposes of § 6672(a) is *an issue of first impression* for this court." (*Id*. (emphasis added).)

- The Sixth Circuit agreed with the district court that "the facts of this case make the issue of recklessness a '*close call*,'" but disagreed with the district court that "Byrne and Kus acted unreasonably." (DE 132 at 15 (emphasis added).)

- The Sixth Circuit agreed with the district court that "Byrne and Kus knew or should have known there was a substantial risk that Eagle Trim's trust-fund taxes were not being paid." (DE 132 at 16.)

- The Sixth Circuit also agreed with the district court that "Byrne and Kus had a reasonable opportunity to investigate the status of Eagle Trim's trust-fund taxes." (*Id*.) Similarly, the Sixth Circuit stated that "Byrne and Kus had a reasonable opportunity to discover and remedy the nonpayment of trust-fund taxes." (DE 132 at 17.)

In sum, given that this Court and the Sixth Circuit each considered the issue of "recklessness" a "close call," it logically follows that the Government's position, at least at to this issue, was "justified in substance or in the main." *Pierce*, 487 U.S. at 565. The law of the case − which emerges from the findings of both the trial and appellate courts − is that recklessness was "a close call." (DE 99 at 14, DE 132 at 15.) On the issue of recklessness, "[a] closer case than this one is difficult to imagine." (DE 161 at 13.)

**(d)    Reasonable cause exception and the second appeal**

By way of background, the Sixth Circuit's May 15, 2017 "legal standard"

discussion recognized a "reasonable cause" exception to Section 6672(a) liability.

(DE 132 at 14.)  Specifically, the Sixth Circuit "adopt[ed] the Second Circuit's

'reasonable cause' exception to § 6672(a) liability," such that:

> . . . "a responsible person's failure to cause the withholding taxes to be
> paid is not willful if he believed that the taxes were in fact being paid,
> so long as that belief was, in the circumstances, a reasonable one."
> *Winter*, 196 F.3d at 345 (citations and alteration omitted).  That is, if a
> responsible person can demonstrate by a preponderance of the
> evidence that he reasonably believed that trust-fund taxes were being
> paid, he will not be liable under § 6672(a).  This narrow exception
> will not permit responsible corporate officers to evade liability simply
> because they compartmentalized responsibilities and adopted a "hear-
> no-evil-see-no-evil" policy.  Rather, this exception limits liability to
> those who, under the circumstances, failed to take reasonable steps to
> ensure payment of trust-fund taxes after having received notice that
> those taxes were not being paid.

(*Id*. (internal footnote omitted).)[4]  As to the reasonable-cause exception, the Sixth

Circuit *disagreed* with the district court that Byrne and Kus "acted

unreasonably[,]" and "did not demonstrate by a preponderance of the evidence that

they reasonably believed that Eagle Trim's trust-fund taxes for the third and fourth

---

[4] Byrne contends that each of the "reasonable cause" cases cited by the Sixth
Circuit predates the July 25, 2005 assessments at issue here, and he further
contends that there has not been any contrary Sixth Circuit authority to support the
Government's position since the July 25, 2005 assessments.  (DE 155 at 22.)  Even
so, the Sixth Circuit clearly adopted the Second Circuit's "reasonable cause"
exception, as set forth in *Winter*, on May 15, 2017.  (DE 132 at 14.)

quarters of 2000 were being paid."  (DE 132 at 15, 17.)  The Sixth Circuit held that "Byrne and Kus took reasonable steps to ensure the timely payment of trust-fund taxes and reasonably believed that the taxes were being paid."  (DE 132 at 18.)

Byrne and Kus make two arguments related to the "reasonable cause exception."  First, Byrne contends that "[t]he Government had ample information demonstrating that . . . their reliance upon the advice of Eagle Trim's accountants was reasonable[.]"  (DE 155 at 25.)  Similarly, Kus asserts that "[t]he Government had ample information demonstrating that Kus and Byrne lacked the ability to pay the taxes and that their reliance upon the advice of Eagle Trim's accountants was reasonable."  (DE 156 at 18.)  However, as set forth in detail above, the Matheson declaration and supplemental affidavit were before the Court at the time of its May 12, 2008 and June 16, 2015 dispositive motion decisions, which denied Kus and Byrne's motions for summary judgment.  (*See* DEs 32-2, 33-2, DE 40; DEs 71-2, 96.)  The same is true of Fuller, Kus and Byrne deposition testimony attached to Byrne and Kus's October 5, 2007 motions for summary judgment.  (DE 155 at 27, DE 156 at 21; *see also* DE 24, DE 27.)

Second, Kus argues that the Government "lost on substantially similar issues."  (DE 156 at 22-23.)  "In determining for purposes of clause (i) whether the position of the United States was substantially justified, the court shall *take into account* whether the United States has lost in courts of appeal for other circuits on

substantially similar issues."  26 U.S.C. § 7430(c)(4)(B)(iii) (emphasis added).

Despite the fact that the Sixth Circuit did not adopt the "reasonable cause"

exception to Section 6672(a) until its May 15, 2017 opinion in this very case, Kus

cites Section 7430(c)(4)(B)(iii) and relies upon three non-Sixth Circuit opinions in

arguing that the Government "was well aware of the reasonable cause exception

prior to litigating this case."  (DE 156 at 22-23.)  *See Winter v. United States*, 196

F.3d 339, 345 (2d Cir. 1999) ("this Circuit recognizes a so-called 'reasonable

cause' exception to section 6672(a) liability[.]"); *Newsome v. United States*, 431

F.2d 742, 746 (5th Cir. 1970) ("'reasonable cause' is part of the civil test in

determining whether the failure to collect, account for, and pay over was willful.")

(external footnote omitted); and, *Smith v. United States*, 555 F.3d 1158, 1170 (10th

Cir. 2009) ("In *Finley v. United States,* 123 F.3d 1342, 1348 (10th Cir.1997) (*en

banc*), we recognized the 'reasonable cause exception' to 'excuse the failure to

pay' payroll taxes held in trust for the government.").  Kus and Byrne also point

out that they, in their 2007 motions for summary judgment, relied upon *Dooley v.

United States*, No. 90-CV-71348-DT, 1992 WL 88136, *4 (E.D. Mich. Jan. 24,

1992) (Rosen, J.), to illustrate that their lack of knowledge was not reckless.  (DE

156 at 22-23, DE 164 at 3 n.2; *see also* DE 24 at 25, DE 24-6, DE 27 at 26, DE 27-

14.)[5]

---

[5] In *Dooley*, the Court cited *Feist v. United States*, 607 F.2d 954, 961 (Ct. Cl. 1979)

The Government contends that "[t]he engine driving the Sixth Circuit's reversal of the trial verdict was the adoption of new law." (DE 161 at 13.) Kus replies that the Sixth Circuit "did not change existing law when it adopted holdings from other circuits[,]" and Byrne seconds this argument. (DE 163 at 6-7, DE 164 at 2-3.) However, even if this Court "takes into account" the *Winter*, *Newsome* and *Smith* decisions: (1) the Second Circuit's decision in *Winter* cites a *prior* case for its recognition of a "so-called 'reasonable cause" exception . . . [,]" *Winter*, 196 F.3d at 345 (citing *United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994)); (2) the Fifth Circuit's decision in *Newsome* recognized *prior* holdings "that 'reasonable cause' is part of the civil test in determining whether the failure to collect, account for, and pay over was willful[,]" *Newsome*, 431 F.2d at 746 (*see*, *e.g.*, *Frazier v. United States*, 304 F.2d 528, 530 (5th Cir. 1962)); and (3) the Tenth Circuit's decision in *Smith* cited a *prior* decision that 'recognized the 'reasonable cause exception'. . .[,]" *Smith*, 555 F.3d at 1170 (quoting *Finley v. United States*, 123 F.3d 1342, 1348 (10th Cir. 1997)). In other words, at the time of these decisions, the "reasonable cause exception" was settled law for the Second, Fifth and Tenth Circuits. This was not the case for the Sixth Circuit at the time of its May 15, 2017

---

("absence of willfulness can be proved by an affirmative showing that the responsible person did not disregard his duties, and that he undertook all reasonable efforts to see that such taxes would in fact be paid, in circumstances where the employer had the means of payment and could reasonably be expected to make the payment.").

opinion. Thus, even if the Government was *aware* of these cases at the time it was litigating this issue before the Sixth Circuit, it is not clear that the three identified cases were, as Plaintiff puts it, "adverse rulings in other circuits[.]" (DE 164 at 5; *see also* DE 164 at 6.) In fact, the "reasonable cause exception" to Section 6672(a) has not been adopted by every circuit. *See, e.g.*, *Barnett v. United States*, 594 F.2d 219, 221 (9th Cir. 1979) ("Conduct motivated by a reasonable cause may nevertheless be willful.") (citations omitted); *Harrington v. United States*, 504 F.2d 1306, 1316 (1st Cir. 1974) ("an act is 'willful' within the meaning of Section 6672 if it is voluntary, conscious and intentional; no bad motive or intent to defraud the United States need be shown, and a 'reasonable cause' or 'justifiable excuse' element has no part in this definition."); *Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir. 1970) ("The standard of willfulness should not be construed to include lack of 'reasonable cause' or 'justifiable excuse.' These concepts tend to evoke notions of evil motive or bad purpose which properly play no part in the civil definition of willfulness."). If, *arguendo*, the Government is supposed to take heed of the "established" law *in other circuits*, it just as well could have been charged with following the law of the First, Seventh and Ninth Circuits, rather than the Second, Fifth and Tenth.

Moreover, on May 15, 2017, when the Sixth Circuit itself expressly adopted *Winter*'s definition of reasonable cause (*see* DE 132 at 14), it also recognized the "muddled" circumstances of this case:

> While the district court did not have the benefit of our adopting a reasonable-cause exception to § 6672(a), the district court's finding that Byrne and Kus were reckless largely turned on the reasonableness of their reliance on WCD's guidance and audits. Under the circumstances—as muddled as they are—we disagree with the district court that Byrne and Kus did not demonstrate by a preponderance of the evidence that they reasonably believed that Eagle Trim's trust-fund taxes for the third and fourth quarters of 2000 were being paid.

(DE 132 at 17.) Thus, in addition to the "reasonable cause exception" not being the law of this Circuit prior to May 15, 2017, the Sixth Circuit's characterization of this case's circumstances as "muddled" does not suggest that the Government's position on "reasonable cause" was not substantially justified.

### c. Summary

As the Sixth Circuit has observed, "'willful conduct may also include 'a reckless disregard for obvious or known risks.'" *Calderone v. United States*, 799 F.2d 254, 259-260 (6th Cir. 1986) (quoting *Bolding v. United States*, 565 F.2d 663, 672 (Ct. Cl. 1977) (citations omitted)). In the end, the Sixth Circuit determined that "the government ha[d] successfully argued that Byrne and Kus were negligent[,]" but further determined that "Byrne and Kus ha[d] met their burden in demonstrating that their negligence in believing that Eagle Trim's trust-fund taxes were being paid for the third and fourth quarters of 2000 did not rise to the level of

recklessness." (DE 132 at 21.) Either because this Court on August 4, 2015 and the Sixth Circuit on May 15, 2017 considered the recklessness issue to be a "close call," or because the Sixth Circuit did not adopt a reasonable cause exception until May 15, 2017, which, when finally applied, operated in Byrne and Kus's favor, the Court should conclude that the Government's October 5, 2007 position on willfulness was "justified in substance or in the main." *Pierce*, 487 U.S. at 565.

### 2.    Counter-defendant Kus's bill of costs

Kus's May 18, 2018 bill of costs seeks a total of $4,221.88. (DE 157.) He supports this request with a form that clearly explains the amount sought: (a) $910 for Clerk's fees, which are comprised of two $455 filing fees; (b) $1,666.88 for transcript fees; and, (c) $1,645 in costs as set forth in the Sixth Circuit's August 10, 2017 mandate. (DE 157 at 1-2, 10, 26.)

Judge Tarnow referred this matter to me for a report and recommendation. (DE 159.) However, the Government has since filed a response, which indicates that it does not object to the bill of costs. (DE 162.) Therefore, assuming that counsel for Kus and Byrne will share in the $1,645 in costs jointly awarded by the Sixth Circuit, the Court should grant Defendant Kus's request for reimbursement of $4,221.88 in costs.

### D.    Conclusion

In accordance with the foregoing analysis, the Court should: **(1)** deny Plaintiff Byrne's motion for fees and costs pursuant to 26 U.S.C. § 7430 (DE 155), except that the denial of costs should be without prejudice; **(2)** deny counter-defendant Kus's motion for recovery of attorneys' fees (DE 156); **(3)** grant counter-defendant Kus's bill of costs (DE 157) as unopposed; and **(4)** grant the joint motion for briefing schedule (DE 160) *nunc pro tunc*.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

29

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  October 2, 2018              *s/Anthony P. Patti*
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record
on October 2, 2018, electronically and/or by U.S. Mail.

                            s/Michael Williams
                            Case Manager for the
                            Honorable Anthony P. Patti